UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |
|---|---|
| In re: On-Line Travel Company (OTC) / Hotel Booking Antitrust Litigation | Case No.   3:12-cv-3515-B |

**DEFENDANTS TRAVELOCITY.COM LP'S AND SABRE HOLDINGS CORPORATION'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND FOR AN ORDER EXCLUDING <u>CERTAIN CLAIMS OF PUTATIVE CLASS MEMBERS</u>**

George S. Cary
Steven J. Kaiser
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Ave., NW
Washington, DC 10006

*Attorneys for Travelocity.com LP and
Sabre Holdings Corporation*

Travelocity.com LP and Sabre Holdings Corporation ("Travelocity"[1]) submit this Reply Memorandum in further support of their Motion to Compel Arbitration and for an Order Excluding Certain Claims of Putative Class Members (the "Motion to Compel Arbitration" or "Mot.") and in response to Plaintiffs' Brief in Opposition to Travelocity.com's and Sabre Holdings Corporation's Motion to Compel Individual Arbitration (the "Opposition" or "Opp'n").

## PRELIMINARY STATEMENT

There is no serious dispute that, since February 4, 2010, parties that purchased hotel stays using the Travelocity website have agreed to arbitrate claims against Travelocity relating to their use of the Travelocity website.  Plaintiffs concede (and, in their consolidated amended complaint filed on May 1, 2013 (the "CAC"), have reconfirmed) that at least some of them base their claims against Travelocity on such purchases and none of those Plaintiffs dispute they indicated their agreement with the Travelocity User Agreement when they completed their hotel booking.  Plaintiffs also do not dispute that large numbers of the putative class they seek to represent are likewise subject to the User Agreement.

Despite these facts, Plaintiffs ask this Court to disregard the strong federal policy in favor of arbitration and several recent Supreme Court and Fifth Circuit decisions and deny Travelocity its federal right to arbitration.  As discussed below, none of the arguments Plaintiffs raise withstand scrutiny and the Court should grant Travelocity's motion in its entirety.

## ARGUMENT

### I. THE ARBITRATION CLAUSE IS VALID AND ENFORCEABLE

Plaintiffs cannot and do not refute the showing Travelocity made in its Motion to Compel Arbitration that, to the extent they purchased the hotel stays at issue using Travelocity

---

[1] Plaintiffs do not dispute that any relief ordered in respect of this motion should apply equally to Travelocity.com LP and to Sabre Holdings Corporation, the corporate parent of Travelocity.com LP.

from February 4, 2010 forward, they are subject to the arbitration provision in the Travelocity User Agreement (the "Arbitration Clause"). See Mot. at 7; Trejo Decl. Exs. B-D.[2] Among other things, Travelocity has established that any Travelocity user booking a hotel room during that period was required affirmatively to indicate his or her assent to the User Agreement in order to complete the booking by pressing a button that said "Agree and Complete Reservation" with the notice that "By clicking 'Agree and Complete Reservation,' you: Agree to the policies stated above and to the Travelocity User Agreement." See Mot. at 7; Trejo Decl. ¶ 3; Trejo Decl. Ex. A. This is more than sufficient to establish the user's assent to the User Agreement. See, e.g., Recursion Software, Inc. v. Interactive Intelligence, Inc., 425 F. Supp. 2d 756, 782-84 (N.D. Tex. 2006) (holding that online license agreement was valid and enforceable because users were required to manifest assent to agreement before downloading software and were permitted to peruse agreement before assenting); RealPage, Inc. v. EPS, Inc., 560 F. Supp. 2d 539, 541 n.1, 545 (E.D. Tex. 2007) (holding that online license agreement was valid and enforceable because users could not proceed with software update without indicating acceptance of agreement).

        Plaintiffs' contrary assertions—and misleading characterization of the agreement at issue here as a "browsewrap agreement"—do not withstand scrutiny. Plaintiffs suggest, see Opp'n at 3, that it is essential for contract formation for the user to be required to "scroll through" the agreement before indicated assent. That is simply incorrect. See, e.g., RealPage, 560 F. Supp. 2d at 545 (quoting Barnett v. Network Solutions, Inc., 38 S.W.3d 200, 204 (Tex. Ct. App. 2001) for proposition that "[i]t was [user's] responsibility to read the electronically-presented contract, and he cannot complain if he did not do so" and finding agreement validly

---

[2]     Plaintiffs also do not dispute that the Arbitration Clause covers the dispute at issue in the consolidated cases.

formed despite lack of requirement that user scroll through its terms).[3] Nor is an agreement, like the one at issue here, which was accessible by a link immediately adjacent to the assent button, in any sense "hidden," as Plaintiffs incorrectly assert, Opp'n at 3. See, e.g., Leong v. Myspace, Inc., No. CV 10-8366 AHM EX, 2011 WL 7808208, at *5 (C.D. Cal. Mar. 11, 2011) (holding that Plaintiff had adequate notice of agreement that, as here, was "only a mouse-click away"). By contrast, the "browsewrap" agreements of the kind at issue in the cases Plaintiffs cite arose in situations where there was no requirement for the user to indicate assent for the transaction to go forward or where the terms of the agreement were not, as here, "a mouse-click away."[4]

Plaintiffs' assertion that Travelocity must present more evidence to establish they entered into the agreement is also incorrect. As Travelocity discussed in its opening brief, four of the Plaintiffs themselves alleged in their original complaints that they made purchases using Travelocity, and three of those four alleged they did so during the relevant period.[5] See Mot. at 2

---

[3] Plaintiffs are likewise incorrect that the agreement in Recursion Software "require[ed] the contracting party to 'scroll through the contract before accepting it,'" see Opp'n at 4. As with the Travelocity User Agreement, users were merely permitted to scroll the agreement. See Recursion Software, 425 F. Supp. 2d at 782; see also Real Page, Inc., 560 F. Supp. 2d at 545 (concluding that online license agreement was a validly formed contract despite fact that users were not required to scroll through the agreement before manifesting assent).

[4] For example, in Specht v. Netscape Communications Corp., 306 F.3d 17, 27-35 (2d Cir. 2002), the download button, unlike the "agree" button here, did not "make clear to the consumer that clicking on the download button would signify assent" to the agreement and the button was near a hyperlink that did not take users directly to the agreement. See also Kwan v. Clearwire Corp., No. C09-1392 JLR, 2012 WL 32380, at *10 (W.D. Wash. Jan. 3, 2012) (finding that user agreement was invalid where materials sent to user provided websites which did not take user directly to terms and conditions of agreement); Grosvenor v. Qwest Commc'ns Int'l, Inc., No. 09-cv-2848-WDM-KMT, 2010 WL 3906253, at *8 (D. Colo. Sept. 30, 2010) (finding that user agreement was invalid where agreement page contained reference to website containing terms and conditions, but did not specifically reference a relevant agreement, and required users to "leave the installation program, log onto the Internet (if possible), navigate to the proper page, and read the Subscriber Agreement, then return to the installation program's scroll down window to read the remaining ten pages of the High-Speed Internet Modem Installation Legal Agreement before choosing to agree to the terms"). Moreover, in Kwan, 2012 WL 32380, at *10, the user claimed that she did not, in fact, press the button accepting the agreement and had not viewed the agreement. In Jolley v. Welch, 904 F.2d 988, 993-94 (5th Cir. 1990), the issue before the court was the possible forgery of signatures on the agreement containing the arbitration clause (and other agreements) and in that context the court not surprisingly noted that the party moving to compel arbitration had not provided a copy of the relevant agreement. By contrast, here Travelocity has provided a copy of the agreement and evidence that every user had to accept the agreement to make a booking. Plaintiffs do not contest that they in fact pressed the "agree" button.

[5] Travelocity did not, as Plaintiffs assert, state that Mr. Smith or Melissa Newman alleged Travelocity purchases. See Opp'n at 3. Rather, Travelocity noted that one of the Plaintiffs in Newman (Randy Newman) made

3

n.2. None of these Plaintiffs (or Ms. Brown, who in the CAC alleges such a purchase[6]) dispute that they pressed the "Agree and Complete Reservation" button when making their booking. Moreover, none of the cases Plaintiffs cite suggest that a party moving to compel arbitration must provide proof that the counterparty in fact made the purchases they allege in their complaint or actually viewed the arbitration agreement.

Finally, Plaintiffs' argument that the User Agreement is illusory because it notes that it may be amended, see Opp'n at 5, is wrong on the facts and the law. The User Agreement states that a user is only bound by "the terms and conditions in force at the time of [his or her] use." Id.; Trejo Decl.. Exs. B-D. Contrary to Plaintiffs' assertion, it does not provide for unilateral retroactive amendment at any time: for new terms and conditions to apply to a particular user, the user would need to enter into a new transaction and affirmatively agree to those new terms and conditions. See, e.g., Armstrong v. Assocs. Int'l Holdings Corp., 242 F. App'x 955, 958 (5th Cir. 2007) (upholding arbitration provision where "revisions or amendments [could not] take effect until thirty days after notice to the employee"). The cases cited by Plaintiffs finding agreements illusory because they allow one party retroactively to change the rights of the other therefore do not apply to the User Agreement.[7]

---

such a purchase and pointed to the specific allegation in the Newman complaint to that effect. See Motion to Compel Arbitration at 2 n.2. Travelocity said nothing one way or the other about Mr. Smith. Id. at 1 n.2, 11,

[6] Since Travelocity filed its motion on April 1, 2013, one of the four Plaintiffs, Randy Newman, dismissed his case in its entirety. See Notice of Voluntary Dismissal Without Prejudice, Apr. 26, 2013, ECF No. 82. Mr. Newman was likewise omitted from the CAC, as was Mr. Patrick. Mr. Patrick has not dismissed his original complaint, however, and, assuming he does not do so as Mr. Newman did, Mr. Patrick's claims against Travelocity as stated in his original complaint should be sent to arbitration. Otherwise, the CAC alleges that Plaintiffs Brown, see CAC ¶ 17, Rich, see CAC ¶ 28 and Turik, see CAC ¶ 34 base their claims on purchases made through Travelocity, with Brown and Rich alleging bookings during the relevant period. All of the claims asserted by Brown and Rich against Travelocity in the CAC (and in their original complaints, assuming they do not dismiss them) accordingly should be sent to arbitration.

[7] See Morrison v. Amway Corp., 517 F.3d 248, 257 (5th Cir. 2008) (finding arbitration agreement illusory where counterparty to agreement was not required to agree to any amendments before those amendments went into effect); Torres v. S.G.E. Mgmt., LLC, 397 F. App'x 63, 68 (5th Cir. 2010) (finding arbitration clause illusory where clause could "be eliminated or modified 'upon notice,' and the agreement containe[d] no clause preventing a

## II. PLAINTIFFS' CLAIMS ARE ARBITRABLE

### A. Plaintiffs' Federal Statutory Claims Are Arbitrable

The Fifth Circuit already has rejected Plaintiffs' arguments regarding the arbitrability of claims such as those at issue here, holding that: (1) arbitration provides an appropriate forum for the adjudication of claims under the federal antitrust laws, Inv. Partners, L.P. v. Glamour Shots Licensing, Inc., 298 F.3d 314, 318 (5th Cir. 2002); and (2) the "inability to proceed collectively" does *not* deprive plaintiffs of federal statutory rights, Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 298 (5th Cir. 2004).

Plaintiffs' argument that the costs of arbitration here mandate that the Arbitration Clause be nullified fails. As an initial matter, Plaintiffs direct the Court to the wrong AAA rules, specifically the AAA Commercial Arbitration Rules to be used for "Large, Complex, Commercial Disputes," which apply where a party seeks at least $500,000 in damages. See Opp'n Ex. 6 at APP 127. But Plaintiffs acknowledge that the amount in controversy for an individual claimant here is at most a few hundred dollars, Opp'n at 18. The applicable rules relating to *consumer* arbitrations of this nature—which Travelocity previously provided the Court[8]—cap a consumer's arbitration costs at $200 and specifically provide that the $1,500 per day compensation for the arbitrator will be paid by "the business" (*i.e.*, Travelocity). See Exhibit A to Travelocity Stay Opp'n at App. 6. Travelocity would also be required to pay "[a]ll expenses of the arbitrator, including required travel and other expenses, and any AAA expenses,

---

modification from applying to disputes arising before the modification"); Carey v. 24 Hour Fitness, USA, Inc., 669 F.3d 202, 206 (noting that "[t]he crux of this issue is whether 24 Hour Fitness has the power to make changes to its arbitration policy that would have retroactive effect, meaning changes to the policy that would strip the right of arbitration from an employee who has already attempted to invoke it," and finding arbitration clause invalid where clause did not "limit[] 24 Hour Fitness's ability to make retroactive modifications to the arbitration provision").

[8]   See Opp'n to Pls.' Mot. to Stay Arbitration Briefing Pending Supreme Ct. Decision and Mot. to Allow for Disc. Regarding Arbitration and for Extension of Time for Pls. to Respond to Mot. to Compel Arbitration ("Travelocity Stay Opp'n"), Apr. 12, 2013, ECF No. 75.

as well as the costs relating to proof and witnesses produced at the direction of the arbitrator." Id. at App. 7. Plaintiffs' assertion that any of these expenses would be borne by the claimant, see Opp'n at 13, is simply wrong.

Plaintiffs' reliance on Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79 (2000), is misplaced. First of all, in Green Tree, the Court upheld the arbitration agreement. Plaintiffs argue that the Court nevertheless held open the possibility that "prohibitive" arbitration costs could cause an arbitration agreement to be unenforceable. Whether that is a correct reading of Green Tree is beside the point—here it is clear that there would be no "prohibitive" arbitration costs to the claimant because such costs would be capped at $200 (by contrast, the fee for filing a civil action in this Court is $350). Indeed, Justice Ginsberg, in her dissent in Green Tree, foreshadowed this very case when she suggested that the issue of whether costs were "prohibitive" would have been avoided all together had the arbitration agreement called for AAA arbitration, with its consumer-friendly cap on costs. See id. at 95 (Ginsburg, J., dissenting.).

Plaintiffs incorrectly rely on Green Tree in suggesting the "costs" at issue there were the expenses of advocating a case, such as legal and expert fees. But as is plain from the text of the decision, the issue in Green Tree was the "payment of filing fees, arbitrators' costs, and other arbitration expenses," id. at 84, and whether the imposition of such "arbitration costs" precludes the "waiver of judicial remedies," id. at 90. The expenses of *advocating* a case, such as legal and expert fees, which would be incurred in either a court or arbitration, plainly are not relevant to that calculus.

Plaintiffs' real complaint therefore must be that the User Agreement's requirement that Travelocity and its customers not participate in class actions against one another

6

will prevent Plaintiffs from vindicating their federal statutory rights. But the Fifth Circuit rejected precisely that argument in Carter, 362 F.3d at 298 ("[W]e reject the Carter Appellants' claim that their inability to proceed collectively deprives them of substantive rights available under the FLSA.").[9] Plaintiffs attempt to avoid this holding by pointing to an alternative ground upon which the court also found the arbitration clause to be enforceable. In particular, after "first" rejecting the argument that class action waivers prevent vindication of statutory rights, the Fifth Circuit then turned to the Appellants' "next argu[ment]" regarding fees and costs, which it found to be mooted. Id. at 299-300. Likewise, in Homa v. American Express Co., the Third Circuit in a case involving state statutory claims held that "[e]ven if [plaintiff] cannot effectively prosecute his claim in an individual arbitration that procedure is his only remedy, illusory or not." 494 F. App'x 191, 196 (3d Cir. 2012). The court added that "regardless of what some persons might regard as fair" it would be "absolutely inconsistent" with the FAA to invalidate an arbitration agreement on the grounds that it did not allow for class procedures. Id. at 197.[10] There is no reason to hold otherwise here.[11]

**B.    The User Agreement Does Not Create "Non-Financial" Barriers That Prevent Plaintiffs From Effectively Vindicating Their Statutory Rights**

Plaintiffs' generalized attacks on the impartiality of arbitrators in Tarrant County are both unwarranted and legally insufficient to prevent enforcement of the User Agreement.

---

[9]    The federal statute involved in Carter, the Fair Labor Standards Act, "explicitly provide[d] for class action suits." Carter, 362 F.3d at 298. The federal antitrust laws, of course, do not.

[10]   Homa distinguished In re American Express Merchants' Litig., 667 F.3d 204 (2d Cir. 2012) ("Amex") on the basis that the claims at issue in Amex were federal statutory claims, not, as in Homa, state law claims. 494 F. App'x at 196 n.2. Of course, here Plaintiffs do assert state law claims against Travelocity along with claims under the federal antitrust laws. Moreover, the Third Circuit's reasoning in Homa applies equally to all of Plaintiffs' claims.

[11]   In the face of this controlling authority from the Supreme Court and Fifth Circuit, Plaintiffs' almost singular reliance on Amex is telling. In any event, the fact that the Supreme Court has already vacated and remanded two Second Circuit decisions on the issue in Amex and now is considering the Second Circuit's decision on *certiorari* should provide Plaintiffs with little optimism that the Court uphold Amex. As it is, Carter remains the law in the Fifth Circuit.

See, e.g., Armstrong, 242 F. App'x at 959 ("[G]eneralized attacks on arbitration are out of step with the federal policy favoring arbitration."). The Fifth Circuit has "follow[ed] the Supreme Court's lead" and declined to "indulge the presumption that parties in an arbitral body conducting a proceeding would be unable or unwilling to retain competent, conscientious and impartial arbitrators." Id. (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 30 (1991)). Plaintiffs fail to cite a single case supporting the argument.[12]

Plaintiffs' argument that this Court is precluded from severing provisions of the User Agreement and must instead invalidate the entire Arbitration Clause is also incorrect. Plaintiffs argue that an agreement that does not specifically provide for severance cannot be reformed to avoid problematic requirements, citing cases where a court refused to sever in the absence of such a clause. See Opp'n at 16 n.9 (citing Cooper v. MRM Inv. Co., 367 F.3d 493, 512-13 (6th Cir. 2004) and Perez v. Globe Airport Sec. Serv., Inc., 253 F.3d 1280, 1287 (11th Cir. 2001), vacated pursuant to stipulation of dismissal, 294 F.3d 1275 (11th Cir. 2002)).

In any event, that argument does not apply here because there *is* a severability clause in the User Agreement. See Trejo Decl.. Exs. B-D ("These terms and conditions shall be deemed severable. In the event that any provision is determined to be unenforceable or invalid, such provision shall nonetheless be enforced to the fullest extent permitted by applicable law, and such determination shall not affect the validity and enforceability of any other remaining provisions."). Moreover, the Fifth Circuit in Carter specifically endorsed severance, including where, as here, the counterparty agrees to waive the clause at issue. See 362 F.3d at 300 (5th Cir. 2004) ("Carter Appellants' prohibitive costs argument has been mooted by Countrywide's

---

[12] The only case cited in that section of Plaintiffs' brief, Cole v. Burns International Security Services, 105 F.3d 1465 (D.C. Cir. 1997), involved an arbitration clause that was found to be enforceable, with the court recognizing that any concerns about the theoretical advantage that a "repeat [arbitration] player" might have is not relevant to the analysis. See id. at 1475.

representation to the district court that it would pay all arbitration costs."). Accordingly, should the Court agree with Plaintiffs that these clauses cause the agreement to be unenforceable, the remedy is to sever the clauses, not invalidate the rest of the agreement.

**C.     Plaintiffs' Arguments That The Litigation Should Not Be Split Into Arbitration And Litigation Are Meritless**

Plaintiffs' assertion that granting Travelocity's motion would result in a "ludicrous" dual-track process is also wrong as a matter of law. Indeed, in In re Cotton Yarn Antitrust Litigation, 505 F.3d 274, 283 (4th Cir. 2007), the Fourth Circuit rejected the very argument that "because they allege the existence of a price-fixing conspiracy, the inability to join all defendants in a single proceeding prevents them from vindicating their statutory rights." Id. After analyzing Jung v. Ass'n of American Medical Colleges, 300 F. Supp. 2d 119 (D.D.C. 2004) and Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690 (1962), the two cases on which Plaintiffs rely, the Fourth Circuit held that "contrary to the argument of the plaintiffs, we do not believe that the plaintiffs' inability under the terms of the arbitration clauses to sue both remaining defendants in a single proceeding affects their ability to prove a price-fixing conspiracy."[13] In re Cotton Yarn, 505 F.3d at 283.

**III.    TRAVELOCITY DOES NOT SEEK DISMISSAL OF ABSENT CLASS MEMBERS' CLAIMS, ONLY AN ORDER EXCLUDING PUTATIVE CLASS MEMBERS WHOSE CLAIMS ARE SUBJECT TO ARBITRATION**

Plaintiffs are correct that, unless and until a class is certified, putative class members' claims are not part of this litigation. See Opp'n at 17-18. That is why Travelocity asked the Court to *strike* the allegations in the various complaints that suggested a class that

---

[13]   Unlike this case, Jung and Continental Ore involved splitting a single conspiracy claim among multiple proceedings, with the result that the entirety of the claim would not be litigated in any forum. In Jung, the court declined to compel plaintiffs to arbitrate one aspect of their alleged tripartite conspiracy, not an entire conspiracy claim. In Continental Ore, the Supreme Court held that the circuit court erred in analyzing the plaintiff's conspiracy claims involving five defendants "as if they were five completely separate and unrelated lawsuits." 370 U.S. at 698. Here, as in In re Cotton Yarn, Plaintiffs would be able to litigate their claims in their entirety in either or both fora.

9

included members with claims that were subject to the relevant User Agreements.  See Motion to Compel Arbitration, at 12.  Travelocity did not ask the Court to *dismiss* such claims as Plaintiffs state, Opp'n at 18.  Rather, to relieve the Court of having to confront this issue multiple times, Travelocity requested that the Court strike such allegations from the various complaints (and, now, from the CAC).[14]  The effect of striking the offending class allegations will be to effectuate the Court's ruling on the motion by establishing that whatever class the Court considers at the class certification stage will not include claims that are subject to arbitration.

## CONCLUSION

For the foregoing reasons, the Court should grant Travelocity's Motion to Compel Arbitration in its entirety.

---

[14]  Particularly insofar as the CAC adds numerous additional Plaintiffs and several Defendants and does not include numerous original Plaintiffs, the CAC supersedes for all purposes the underlying complaints that were consolidated herein, rendering them moot.  See, e.g., King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).  For the avoidance of doubt in respect of this motion, the Court should dismiss the underlying complaints of those original Plaintiffs that are no longer pressing their claims (other than perhaps as absent class members), in particular the complaints in Bennett v. Orbitz Worldwide, Inc., No. 3:12-cv-03916 (N.D. Tex. Sept. 28, 2012); Bondar v. Expedia, Inc., No. 1:12-cv-03556 (D. Md. Dec. 3, 2012); Ellens v. Expedia, Inc., No. 2:12-cv-01519 (W.D. Wash. Sept. 6, 2012); Gold Seal Termite & Pest Control Co. v. Orbitz Worldwide, Inc., No. 1:12-cv-01441 (S.D. Ind. Oct. 5, 2012); Margolick v. Expedia, Inc., No.  4:12-cv-05803 (N.D. Cal. Nov. 9, 2012); Martinez v. Kimpton Hotel & Rest. Grp. LLC, No. 3:12-cv-05816 (N.D. Cal. Nov. 13, 2012); Murray v. Marriott Int'l, Inc., No.  8:12-cv-03179 (D. Md. Oct. 31, 2012) ; Olcott v. Kimpton Hotel & Rest. Grp., LLC, No. 4:12-cv-04673 (N.D. Cal. Sept. 6, 2012); Olson v. Travelocity.com LP., No. 3:13-cv-00735-B (N.D. Tex.); Patrick v. Expedia, Inc., No. 3:12-cv-06171 (N.D. Cal. Dec. 5, 2012); Shames v. Expedia, Inc., No. 3:12-cv-05444 (N.D. Cal. Oct. 22, 2012); Skidmore v. Expedia, Inc., No. 1:12-cv-02883 (D. Md. Sept. 27, 2012); Testani v. Hotels.com, LP, No. 1:12-cv-8573 (S.D.N.Y. Nov. 25, 2012); Thompson v. Booking.com, B.V., No. 3:13-cv-00587 (N.D. Tex. Feb. 4, 2013); Ulaby v. Expedia, Inc., No. 4:12-cv-04582 (N.D. Cal. Aug. 30, 2012); Wagner v. Expedia, Inc., No.  3:12-cv-05234 (N.D. Cal. Oct. 9, 2012); Walker v. Orbitz Worldwide, Inc., No.  5:12-cv-00968 (W.D. Okla. Aug. 31, 2012); and Winkelstein v. Expedia, Inc., No.  3:12-cv-05573 (N.D. Cal. Oct. 30, 2012).

Dated: May 6, 2013　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　CLEARY GOTTLIEB STEEN & HAMILTON LLP


　　　　　　　　　　　　　　　　　By: */s/ George S. Cary*　　　　　　　　　
　　　　　　　　　　　　　　　　　　　George S. Cary (D.C. Bar No. 285411)
　　　　　　　　　　　　　　　　　　　Steven J. Kaiser (D.C. Bar No. 454251)

　　　　　　　　　　　　　　　　　2000 Pennsylvania Ave., NW
　　　　　　　　　　　　　　　　　Washington, DC 20006
　　　　　　　　　　　　　　　　　(202) 974-1500
　　　　　　　　　　　　　　　　　(202) 974-1999 (facsimile)
　　　　　　　　　　　　　　　　　gcary@cgsh.com
　　　　　　　　　　　　　　　　　skaiser@cgsh.com

　　　　　　　　　　　　　　　　　*Attorneys for Travelocity.com LP and Sabre Holdings Corporation*

## CERTIFICATE OF SERVICE

I certify that on May 6, 2013, I caused a true and correct copy of the foregoing document to be served by electronic transmission through the Court's CM/ECF system to counsel registered to receive electronic notification and to be served via First Class U.S. Mail, postage prepaid, upon the following counsel of record:

Adam C. Belsky
Gross Belsky Alonso LLP
One Sansome Street, Suite 3670
San Francisco, CA 94104

David R. Scott
Scott + Scott
108 Norwich Ave
PO Box 192
Colchester, CT 06415

Guido Saveri
Saveri & Saveri Inc.
706 Sansome Street
San Francisco, CA 94111

Paul Mark Sandler
Shapiro Sher Guinot and Sandler
36 S Charles St., Suite 2000
Baltimore, MD 21201

Richard E. Shevitz
Cohen & Malad LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204

*/s/ George S. Cary*
George S. Cary (D.C. Bar No. 285411)
2000 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 974-1500
(202) 974-199 (facsimile)
gcary@cgsh.com

*Attorneys for Defendants Travelocity.com LP and Sabre Holdings Corporation*