UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| ONLINE TRAVEL COMPANY (OTC) | § | Consol. Civil Action No. 3:12-cv-3515-B |
| HOTEL BOOKING ANTITRUST | § | |
| LITIGATION | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Compel Arbitration (doc. 71) filed April 1, 2013 by Defendants Travelocity.com LP and Sabre Holdings Corporation[1] (the "Travelocity Defendants" or collectively "Travelocity"). Having considered the Motion and the filings in this case, the Court finds that it should be and hereby is **GRANTED**.

## I.

## BACKGROUND

This consolidated proceeding concerns allegations of price fixing against certain online travel companies and hotel companies. Plaintiffs claim that these companies conspired to set hotel room resale prices and that online travel websites agreed not to resell hotel rooms below this fixed price. The central agreement of the alleged conspiracy contained most favored nation restrictions prohibiting hotels from offering lower prices on rooms through any other distribution channel, including their own websites. Plaintiffs assert that this price-fixing scheme allowed online travel

---

[1] Travelocity.com LP is owned by Sabre Holdings Corporation. Consol. Am. Compl. ¶ 39.

websites to deceive customers by advertising the "best" or "lowest" prices, when in fact all companies were offering the same price.

While disputing Plaintiffs' claims, Travelocity also argues that Plaintiffs who booked hotel rooms via Travelocity's website may not bring their claims in federal court due to Travelocity's User Agreement ("User Agreement"). According to Travelocity, every user completing transactions on Travelocity's website as of February 4, 2010 agreed to the User Agreement, which contains a clause requiring arbitration for "[a]ny Claim where the total amount in controversy is less than US $10,000." Travelocity Mot. Compel 3; *see also* Travelocity App. 13, 23, 33.[2] Furthermore, subparagraph (e) of the arbitration clause stipulates that "unless otherwise mutually agreed by the parties in writing, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding." Travelocity Mot. Compel 4; *see also* Travelocity App. 13, 23, 34. In light of such contractual language, Travelocity argues that Plaintiffs must arbitrate their claims individually. Plaintiffs respond that their inability to proceed as a class would prohibit them from vindicating their statutory rights and consequently object to Travelocity's request.

Travelocity filed the instant motion seeking to compel arbitration pursuant to the terms of the User Agreement on April 1, 2013. In response, Plaintiffs filed a Motion to Stay Arbitration pending the Supreme Court decision in *American Express Co. v. Italian Colors Restaurant*, Case No. 12-133 (the "*Amex* case"). That motion also requested that the Court allow discovery regarding arbitration and requested that the Court extend the briefing schedule on Travelocity's Motion to

---

[2]As discussed by Travelocity, Travelocity has used three different versions of the User Agreement since February 4, 2010, all with the same provisions regarding arbitration. *See* Section II(B)(1)(i), *infra*.

Compel Arbitration. This Court denied Plaintiffs' requests on April 21, 2013. Mem. Op. Apr. 24, 2013. Defendants' Motion to Compel Arbitration is now ripe for disposition.

## II.

## LEGAL STANDARD

The Fifth Circuit follows a two-step procedure in determining whether to compel arbitration. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996) (per curiam). First, the Court must ascertain whether the parties agreed to arbitrate the dispute at issue. *Id.* at 258. An agreement to arbitrate a dispute is shown where (1) there exists between the parties a valid agreement to arbitrate, and (2) the dispute in question falls within the scope of the agreement. *Id.* Once the Court is satisfied that the parties agreed to arbitrate the dispute, it must then determine whether any external legal constraints foreclose arbitration of the dispute. *Id.* A court, "[i]n determining the contractual validity of an arbitration agreement, [applies] ordinary state-law principles that govern the formation of contracts." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004).

## III.

## ANALYSIS

A.   *Choice of Law*

As the User Agreement itself provides, its terms are governed by Texas law. Travelocity Mot. Compel App. ("Travelocity App.") 13, 23, 33 (Exs. B-D). Plaintiffs do not contest the application of Texas law. *See* Pls.' Opp'n Mot. Compel ("Pls.' Opp'n") 2 (citing Texas contract law). As such, the Court examines Texas law in determining whether there is a valid agreement to arbitrate.

B.   *Is the Dispute Governed by a Valid Arbitration Agreement?*

  1.   <u>Is there a valid agreement to arbitrate?</u>

Plaintiffs contend that Travelocty has not shown that there is a valid arbitration agreement, based on their argument that Travelocity has not shown that they assented to the agreement. Plaintiffs also argue that even if they did assent to the User Agreement, it is an unenforceable and illusory "browsewrap" agreement. The Court will address each issue in turn.

      *i.*      *Did Plaintiffs assent to the User Agreement?*

Under Texas law, a valid contract requires an offer, acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutual and binding, and consideration. *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App.—San Antonio 1997, no writ); *McCulley Fine Arts Gallery, Inc. v. "X" Partners*, 860 S.W.2d 473, 477 (Tex. App.—El Paso 1993, no writ). The first issue in determining the validity of the arbitration agreement in this case is whether or not Plaintiffs assented to the User Agreement.

Plaintiffs assert that their contracts with Travelocity are not valid because "Travelocity has not submitted any transaction-specific evidence showing that any Plaintiff assented" to the User Agreement. Pls.' Opp'n 5. The Court, however, agrees with Travelocity that, to the extent Plaintiffs' transactions occurred on or after February 4, 2010, Plaintiffs and all Travelocity users did assent to Travelocity's User Agreement by clicking on a button that said "Agree and Complete Reservation." *See* Travelocity Reply Supp. Mot. Compel ("Travelocity Reply") at 2; Travelocity App. 6 (Ex. A). This button was located directly above a notice explaining that, by clicking the button, the user agrees to the policies set forth in the User Agreement, which was accessible via hyperlink. *See* Travelocity Reply 2; Travelocity App. 6 (Ex. A).

Travelocity has submitted three similar versions of their User Agreement that have been in force at different times. The first version was in force from February 4, 2010 through April 15, 2010.

*See* Travelocity App. 8 (Ex. B). The second version was in force from April 16, 2010 through March 31, 2010. *See id.* at 18 (Ex. C). The current version has been in force since February 1, 2011. *See id.* at 28 (Ex. D). All three versions contain the same arbitration provision and class action waiver provision. Travelocity App. 4 (Trejo Decl. ¶ 4). Thus, any Plaintiffs who made bookings on Travelocity's website from February 4, 2010 through the present were required to assent to the User Agreement containing the arbitration clause in order to complete each transaction. *Id.* at ¶ 3. In the Consolidated Amended Complaint, Plaintiffs Kathleen Brown and Rosemarie Rich both assert claims against Travelocity arising after the User Agreement entered into force on February 4, 2010. *See* Consol. Am. Compl. ¶¶ 17, 28. These plaintiffs, and any other plaintiff whose claims against Travelocity originated after that date, assented to the User Agreement by completing the online transactions. Plaintiffs have produced no evidence to the contrary. As such, Travelocity has provided sufficient evidence that Plaintiffs manifested assent to the User Agreement, including its arbitration provision and class action waiver, even though Travelocity has not provided transaction-specific evidence as to each plaintiff.

    *ii.*  *Is the User Agreement unenforceable "browsewrap"?*

The Court rejects Plaintiffs' argument that the User Agreement is an unenforceable "browsewrap" agreement, and finds that the agreement is instead a "clickwrap" agreement, valid and enforceable under Texas law. *See, e.g., Recursion Software Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 783 (N.D. Tex. 2006); *Barnett v. Network Solutions Inc.*, 38 S.W.2d 200, 204 (Tex. App.-Eastland 2001) (upholding a forum selection clause in a clickwrap agreement similar to Travelocity's). Browsewrap agreements are distinguishable from clickwrap agreements in that "a user may download software under a browsewrap license prior to manifesting assent to its terms."

*Recursion*, 425 F. Supp. 2d at n.14; *see also Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 22-23 (2d Cir. 2002). In the *Recursion* case, users downloading a software program were taken to a page containing the user license agreement. *See Recursion*, 425 F. Supp. 2d at 781. After scrolling to the bottom of that page, users were asked if they agreed to the license terms, and could "only download the software by answering in the affirmative." *Id.* By contrast, in the *Specht* case, users were able to download a program from the website without manifesting unambiguous assent to the license terms. *Specht*, 306 F.3d at 23.

In the case at bar, it was impossible to complete a transaction on the Travelocity website in the absence of affirmative assent to the User Agreement. *See* Travelocity App. 3-4 (Trejo Decl. ¶ 3). It is not, as Plaintiffs argue, necessary for the User Agreement to have a "scroll through" feature; the central issue is whether or not the users were "conspicuously presented with the agreement prior to entering into a contract." *See RealPage, Inc. v. EPS, Inc.*, 560 F. Supp. 2d 539, 545 (E.D. Tex. 2007). In the *RealPage* case, users attempting to install software updates were not required to scroll through the clickwrap license agreement. *Id.* The *RealPage* court reasoned that the *Barnett* holding, which found a forum selection clause in a clickwrap agreement enforceable, did not require a "scroll-through" feature for the contract to be valid, stating that "[i]t was [the user's] responsibility to read the electronically-presented contract, and he cannot complain if he did not do so." *Id.* (quoting *Barnett*, 38 S.W.3d at 204). Such reasoning is equally applicable here. Since the User Agreement was conspicuously presented and Plaintiffs assented to the User Agreement by clicking the "Accept" button to complete each online transaction, it is a valid clickwrap agreement.

        iii.    *Is the User Agreement illusory?*

Plaintiffs also argue that since Travelocity could at any time unilaterally modify the User Agreement and substantially change or revoke the arbitration clause, that clause, including its class action waiver, is illusory and unenforceable. Pls.' Opp'n 5. The Court disagrees. While it is true that "an arbitration clause is illusory if one party can avoid its promise to arbitrate by amending the provision or terminating it altogether," *Carey v. 24 Hour Fitness*, 669 F.3d 202, 205 (5th Cir. 2012) (quoting *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010)) (internal quotation marks omitted), "[t]he crux of this issue is whether [the promisor] has the power to make changes to its arbitration policy that have retroactive effect." *Id.* Travelocity's User Agreement states that "Travelocity may at any time modify this User Agreement and your continued use of this site or Travelocity's services will be conditioned upon the terms and conditions *in force at the time of your use*." Travelocity App. 8 (Ex. B); 18 (Ex. C); 28 (Ex. D) (emphasis added). Unlike the clause in *Carey*, which was silent on the issue of retroactivity, *see* 669 F.3d at 206-07, Travelocity's clause explicitly precludes retroactive application of any changes.

Plaintiffs further argue that the modification clause is illusory since it does not provide a notice window and is not accompanied by a savings clause. Pls.' Opp'n 8. However, the case they cite in their brief on this point, *In re Halliburton*, is distinguishable from the case at bar because in that case the parties had a continuing employment relationship, and the dispute arose *after* the employer had modified the contract. *See* 80 S.W.3D 566, 568 (Tex. 2002) (enforcing arbitration clause in an employment contract where the employee was given notice ten days before the modification went into effect); *see also Armstrong v. Assocs. Int'l Holdings Corp.*, 242 F. App'x 955, 958 (5th Cir. 2007) (per curiam) (arbitration agreement was not illusory despite employer's ability to revise, amend, modify, or discontinue policy at any time because any revisions could not take effect until thirty days

after notice to employee). By contrast, in this case, any modifications to the User Agreement would require the user to complete another transaction and again indicate his or her assent by clicking "Accept."

    2.    <u>Scope of the Agreement</u>

Having found a valid agreement to arbitrate, the next step is to ascertain whether the dispute in question falls within the scope of the agreement. *Webb*, 89 F.3d at 258. The User Agreement's arbitration provision states that "[a]ny Claim where the total amount in controversy is less than US $10,000 shall be resolved via binding, non-appearance-based arbitration initiated through the American Arbitration Association ('AAA')." Travelocity Mot. 3. Plaintiffs do not contest that the instant dispute is included in the scope of this clause. Furthermore, it is well established that the broad nature of an arbitration clause like the one in the User Agreement is indicative of the parties' intent to be bound. *See, e.g.*, *Leggett v. America's Servicing Co.*, No. 3:05-cv-1959-L, 2007 WL 2398510, at *2 (N.D. Tex. Aug. 22, 2007); *Sharju Ltd. P'ship v. Choice Hotels Int'l, Inc.*, No. 3:01-cv-2605-X, 2002 WL 107171, at *2 (N.D. Tex. Jan. 22, 2002). Holding that the arbitration provision is valid, enforceable, and within the scope of the agreement, the Court now moves to the question of whether a federal statute or policy precludes arbitration in this particular case.

C.    *Federal Policy*

The Federal Arbitration Act ("FAA") states that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2006). In *AT&T Mobility LLC v. Concepcion*, the Supreme Court held that the FAA preempts state law in determining whether a class arbitration waiver in consumer contracts is enforceable. 131 S. Ct. 1740, 1753 (2011). It is the burden of the party seeking to avoid

arbitration to establish that Congress intended to preclude the disputed statutory claims. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Shearson/Am. Exp. v. McMahon*, 482 U.S. 220, 227 (1987). As evidenced by the frequent failure of plaintiffs seeking to invalidate arbitration agreements, "the evidentiary record necessary to avoid a class-action arbitration waiver is not easily assembled." *In re Am. Exp. Litig.*, 667 F.3d 204, 217 (2d Cir. 2012).

Claims may be litigated in the arbitral forum "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985). Federal policy carries a strong presumption in favor of arbitrability. *See Concepcion*, 131 S. Ct. at 1748; *KPMG v. Cocchi*, 132 S. Ct. 23, 25 (2011); *Moses H. Cone Mem'l Hosp.*, 460 U.S. 1, 24 (1983). In *Mitsubishi Motors*, the Supreme Court held that antitrust disputes could be settled through arbitration. 473 U.S. at 628; *see also* 54 Am. Jur. 2d Monopolies and Restraints of Trade § 316 ("Antitrust claims arising under the Sherman Act and encompassed within a valid arbitration clause are arbitrable pursuant to the Federal Arbitration Act."). As the Supreme Court also expressed in *Green Tree Financial Corp.-Alabama v. Randolph*, "even claims arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,' the statute serves its functions." 531 U.S. 79, 90 (2000) (quoting *Mitsubishi Motors*, 473 U.S. at 637). The Court noted in *Gilmer v. Interstate/Johnson Lane Corp.* that congressional intent to "preclude a waiver of a judicial forum . . . [would] be discoverable in the text of the [statute], its legislative history, or an 'inherent conflict' between arbitration and the [statute]'s underlying purposes." 500 U.S. 20, 26 (1991). Therefore, if Congress did not intend to allow parties to include a certain type of provision, such as a class-action waiver, in their contracts, this intention

would have been clearly expressed. The Court has found no such language in either the text or legislative history of the Sherman Act. *See* 15 U.S.C. § 1 (2006). The class action waiver itself is not a restriction on Plaintiffs' substantive remedies; rather, "[a] class action is merely a procedural device; it does not create new substantive rights . . . ." *Frazar v. Gilbert*, 300 F.3d 530, 545 (5th Cir. 2002), *rev'd on other grounds*, *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431 (2004).

Plaintiffs contend that the arbitration clause and its class waiver provision should not be enforced because such enforcement would be at odds with the purposes of the federal antitrust policy. Pls.' Opp'n 8. They argue that their inability to proceed as a class would prevent them from effectively vindicating their statutory rights. *Id.* at 9. To support their argument, Plaintiffs point to *Green Tree*, where the Supreme Court recognized that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." 531 U.S. at 90. Although the *Green Tree* Court did not reach the question of how detailed the plaintiff's showing of prohibitive expenses must be before the burden of proof shifted to the defendants to bring forward contrary evidence, *see id.* at 92, Plaintiffs have not shown that the costs of proceeding in arbitration, as opposed to state or federal court, were prohibitive, and thus Plaintiffs have not met that burden in this case.

As an initial matter, the class action waiver contained in the arbitration provision is enforceable. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004). In *Carter*, the appellants argued that they would be deprived of substantive rights under the statute, in that case the Fair Labor Standards Act ("FLSA"), because they were not allowed to proceed as a class. *Id.* at 298. Unlike the Sherman Act, the FLSA "explicitly provides for class action suits," but the Fifth Circuit found the Supreme Court's holding in *Gilmer* controlling and ruled that the class

action waiver was enforceable. *Id.* Further weakening Plaintiffs' argument is the Supreme Court's ruling in *Stolt-Nielsen S.A. v. Animal Feeds International Court*, which held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." 130 S. Ct. 1758, 1775 (2010) (emphasis in original). In the instant case, the contract explicitly prohibits class proceedings, whereas the contract in *Stolt-Nielsen* was silent on the issue. *See id.* It follows that the *Stolt-Nielsen* holding carries even greater weight here, where the contract included an explicit provision barring class actions, and the Court emphasizes that it must "give effect to the intent of the parties." *See id.*

Plaintiffs' main argument rests on the claim that it would not be economically rational for them to arbitrate their antitrust claims individually because no individual plaintiff or class member could prosecute an antitrust action against Travelocity given the high expert witness and other non-recoverable costs that would be involved. *See* Pls.' Opp'n 13-14. The Court in *Green Tree*, however, considered only the "payment of filing fees, arbitrators' costs, and other arbitration expenses" in determining whether costs were prohibitive. *See* 531 U.S. at 84. In this case, the total fees for individual arbitrations are capped at $200. *See* Travelocity App. 6 (Ex. A). The American Arbitration Association ("AAA") Consumer Arbitration Rules provide that the daily arbitrator fee will be paid by the business seeking to enforce an arbitration provision against a consumer, such that in this case Travelocity will pay the daily fee. *See id.* Plaintiffs' argument that each individual plaintiff would be required to pay $750 to the arbitrator in fees, Pls.' Opp'n 13, has therefore been mooted by the fact that Travelocity will bear the cost of compensating the arbitrator, *see* Travelocity Reply 5-6. Furthermore, Travelocity has stated that it would pay "[a]ll expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and

11

witnesses produced at the direction of the arbitrator . . . ." *See* Travelocity Opp'n to Mot. Stay App. 7 (Ex. A). The Fifth Circuit in *Carter* found that the plaintiffs' "prohibitive costs argument ha[d] been mooted by [the defendant's] representation to the district court that it would pay all arbitration costs." 362 F.3d at 300. The same reasoning applies in this case, and as in *Carter*, plaintiffs have failed to meet their burden of "provid[ing] some individualized evidence that [they] likely will face prohibitive costs in the arbitration at issue and that [they are] financially incapable of meeting those costs." *Id.* (quoting *Livingston v. Assocs Fin. Inc.*, 339 F.3d 553, 557 (7th Cir. 2003)).

The other cases cited by Plaintiffs mention only the costs of arbitration itself, not the expenses of advocating a case. *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 669 (6th Cir. 2003) (en banc) (finding a cost-splitting provision requiring plaintiff to pay between $500 and $1622 in arbitration costs unenforceable); *Shankle v. B-G Maintenance Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234-35 (10th Cir. 1999) (finding an arbitration provision where plaintiff would have to pay $1875 to $5000 in arbitration fees unenforceable); *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) (finding arbitration "costs of this magnitude [$2000] a legitimate basis for a conclusion that the clause does not comport with statutory policy"); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1484 (D.C. Cir. 1997) (finding arbitrators' fees of $500 to $1000 per day prohibitively expensive). The only case Plaintiffs cite that has considered the expenses of expert testimony and the limited amount of potential recovery in determining whether costs are prohibitive, *In re American Express Merchants' Litigation*, has already been vacated and remanded twice by the Supreme Court. *See* 667 F.3d 204 (2d Cir. 2012). That decision is not controlling here, and the Court rejects its interpretation of *Green Tree*. In the instant case, the main costs Plaintiffs argue would prevent effective vindication of their rights are a result of their theory of the case, not a result of being forced

to arbitrate. Indeed, Plaintiffs would face similar costs whether this case was in federal court or in arbitration. For all of the above reasons, the Court rejects Plaintiffs' prohibitive costs argument.

D.      *"Non-Financial" Barriers*

Furthermore, the Court rejects Plaintiffs' argument that the User Agreement "contains a number of inherently unfair provisions that also undermine [their] ability to effectively vindicate their federal statutory rights in the chosen arbitral forum." *See* Pls.' Opp'n 15. In Plaintiffs' view, the provision in the arbitration agreement requiring arbitration in Tarrant County, Texas, where Travelocity maintains its headquarters, and the clause prohibiting in-person arbitration without Travelocity's permission are unfair and prevent effective vindication of their rights. *Id.* at 15-16.

It is settled law that a forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). In *Carter*, the Fifth Circuit held that "the same burden on the objecting party of demonstrating unreasonableness" should apply to forum selection clauses in a contract with an arbitration clause. 362 F.2d at 299.

Plaintiffs have failed to demonstrate that the chosen forum, Tarrant County, would be unreasonable. In *Armstrong v. Associates International Holdings Corp.*, the Fifth Circuit stated that "generalized attacks on arbitration are out of step with the federal policy favoring arbitration." 242 F. App'x at 959 (quoting the district court opinion, 2006 WL 2707431, at *4 (N.D. Tex. 2006)). The Supreme Court has also firmly rejected such generalized attacks on multiple occasions, declaring that it "decline[s] to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators." *Gilmer*, 500 U.S. at 30 (quoting *Mitsubishi Motors*, 473 U.S. at 634). The Court reiterates its position

that in the case at bar, Plaintiffs have merely offered a generalized attack on the AAA and its arbitrators in Tarrant County. Further, the Court has no reason to believe that requiring arbitration in Tarrant County is unusual, given that the county is the location of Travelocity's headquarters and part of the Dallas-Fort Worth metropolitan area near where some of Plaintiffs' own attorneys are located. Plaintiffs have not provided the Court with any persuasive information on the issue of arbitral forum in their recent briefing, and fail to cite a single case invalidating an arbitration clause for unfair forum.[3] The Court finds their argument unpersuasive. In any event, their objections to the forum and to the prohibition of live appearances at arbitration have been mooted by Travelocity's agreements to arbitrate "near the claimant's residence (or such other place as the parties mutually agree) and submit to in-person arbitration . . . ." *See* Travelocity Opp'n Mot. Stay 13. The Court sees no reason not to enforce the arbitration provision on these grounds, nor does it find it necessary to sever any part of that provision.

Finally, the Court rejects the argument that arbitration should be denied on the grounds that doing so would "create an inefficient dual-track process." *See* Pls.' Opp'n 16. Although there are no cases from the Fifth Circuit on this point, the Fourth Circuit held in a similar case that it "d[id] not believe that the plaintiffs' inability under the terms of the arbitration clauses to sue both remaining defendants in a single proceeding affects their ability to prove a price-fixing conspiracy." *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 283 (4th Cir. 2007). The plaintiffs in that case, yarn purchasers, alleged a price-fixing conspiracy against yarn manufacturers. They argued that since they sought damages for "conspiratorial actions of *all* the [d]efendants," they were prevented from vindicating

---

[3] Plaintiffs cite only one case in the relevant section of their brief, *Cole v. Burns*, 105 F.3d 1465 (1997), but the court in that case held that the arbitration clause was enforceable.

their statutory rights because they could not join all defendants in a single proceeding. *Id.* (emphasis in original). The *Cotton Yarn* court rejected this argument because "co-conspirators are not necessary parties; a plaintiff can prove the existence of a conspiracy in an action against just one of the members of the conspiracy." *Id.* at 284; *see also* Fed. R. Civ. P. 20; Fed. R. Civ. P. 23; *Wilson P. Abraham Constr. Corp. v. Tex. Indus., Inc.*, 604 F.2d 897, 904 & n.15 (5th Cir. 1979) ("Antitrust coconspirators are jointly and severally liable for all damages caused by the conspiracy to which they were a party. A private plaintiff need not sue all coconspirators but may choose to proceed against any one or more of them.") (citations omitted). The Fourth Circuit also noted that there is no right under antitrust statutes to proceed in a single action against all defendants. *Cotton Yarn*, 505 F.3d at 283. The Court similarly rejects the argument that the joint and several nature of liability would render plaintiffs' claims non-arbitrable; in fact, "because the defendants would be jointly and severally liable, a plaintiff who finds pursuing two actions unduly burdensome could simply seek to hold one defendant liable for all damages caused by the conspiracy." *Id.* at 284.

      The Court recognizes that it is possible that classwide arbitration would be less efficient than proceeding individually, at least for the Plaintiffs. The efficiency argument was addressed by the Supreme Court in *AT&T Mobility LLC v. Concepcion*, and that court's rationale is instructive here. The *Concepcion* Court noted the "fundamental" differences between individual and classwide arbitration, particularly the "additional and different procedures and . . . higher stakes," the difficulty of maintaining confidentiality, and the potential lack of expertise of arbitrators on "often-dominant procedural aspects of certification, such as the protection of absent parties." *Concepcion*, 131 S. Ct. at 1750. After discussing these factors, the Court found that when class arbitration is "manufactured" by the courts rather than through consensual agreement, it "is inconsistent with the FAA." *See id.*

15

at 1751. The *Concepcion* majority further explained that informality, the "principal advantage of [bilateral] arbitration," is negated in classwide arbitration because the process becomes slower, more costly, and "more likely to generate procedural morass than final judgment." *Id.* Finally, the *Concepcion* Court rejected the argument that "class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system,"[4] explaining that a state "cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.* at 1753. Such reasoning is equally applicable here, and the Court, in its discretion, finds that the separate litigation of Plaintiffs' conspiracy claims in the arbitral forum does not pose substantial difficulties warranting the invalidation of a valid agreement to arbitrate.

E.      *Motion to Strike*

Travelocity has moved to strike claims by absent class members from the consolidated amended complaint, arguing that these claims must be arbitrated pursuant to the User Agreement. Travelocity Mot. Compel 11-12. According to Rule 23, "the court may issue orders that: . . . (D) require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). Under Rule 12(f), "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

---

[4] The Supreme Court was discussing the California Supreme Court's decision in *Discover Bank v. Superior Court*, which held that class action waivers in consumer arbitration agreements are unconscionable if: (1) the contract is an adhesion contract; (2) disputes between the parties will likely involve only small amounts of damages; and (3) "it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money . . . ." *Concepcion*, 131 S. Ct. at 1746 (quoting *Discover Bank v. Super. Ct.*, 36 Cal.4th 148, 162-63 (2005)).

Travelocity does not attempt to *dismiss* these claims, and it argues that because no class has been certified, claims of absent class members are not part of the litigation. *See* Travelocity Reply 9-10. Dismissal of putative class members' claims would be premature. *Kay v. Wells Fargo & Co. N.A.*, C 07-01351 WHA, 2007 WL 2141292, at *2 (N.D. Cal. July 24, 2007). Defendants point to *Kay v. Wells Fargo*, where the court granted the defendants' motion to strike allegations of equitable tolling of putative class members at the pleading stage. *Id.* at *1-2. The Court finds that the instant case also calls for claims of absent class members to be stricken prior to class certification. Any claims by absent class members bound by the User Agreement would be impertinent, as those class members would be bound to individually arbitrate their claims. The class the Court considers at the certification stage will not include those claims subject to arbitration pursuant to this Order. In effectuating the Court's ruling to compel arbitration, allegations of putative class members subject to the User Agreement are hereby stricken from the Consolidated Amended Complaint.

## IV.

## CONCLUSION

For the reasons set forth in this order, the Court **GRANTS** Travelocity's Motion to Compel Arbitration. To the extent any of the Plaintiffs' claims are based on their booking of hotel rooms via Travelocity on or after February 4, 2010, such claims must be arbitrated pursuant to the terms of the User Agreement, and the parties are hereby **ORDERED** to arbitrate such claims before an American Arbitration Association-approved or affiliated arbitrator. Further, the Court hereby **STRIKES** any allegations of the Consolidated Amended Complaint to the extent they assert claims by absent class members based on their transactions through Travelocity on or after February 4, 2010. The parties

are further **ORDERED** to submit, in 90-day intervals after the date of entry of this Order, a joint status report advising the Court on the progress of arbitration.

**SO ORDERED.**

**SIGNED: June 15, 2013**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE