**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: On-Line Travel Company (OTC) / Hotel Booking Antitrust Litigation | Case No.   3:12-cv-3515-B |

**SUPPLEMENTAL MEMORANDUM OF LAW OF SABRE HOLDINGS
CORPORATION IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**

Sabre Holdings Corporation ("Sabre") submits this supplemental memorandum of law in support of Defendants' motion to dismiss Plaintiffs' May 1, 2013 Consolidated Amended Complaint (the "Complaint" or "CAC") for failure to state a claim against Sabre upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  Sabre also fully joins, adopts, and incorporates by reference the arguments made in the memorandum submitted by the other Defendants in support of the Defendants' joint motion to dismiss (the "Omnibus Memorandum").

**STATEMENT OF FACTS**

While Plaintiffs lump Sabre in with the OTC Defendants in their definitions, Plaintiffs do not allege that Sabre is an OTC—which it is not.[1]  Plaintiffs' limited allegations regarding Sabre concern its subsidiary Sabre Inc.  Sabre Inc. operates a global distribution system or GDS.  A GDS is a computerized reservation network that connects content suppliers (such as airlines, hotels, and car rental firms) with travel agents (online and offline) and travel management companies (organizations that provide specialized travel related services to the corporations).  The GDS provides this service to travel agents and does not interact with consumers directly.  Sabre Inc. also operates Sabre Hospitality Solutions, which offers IT systems and other support to the hotel industry, including consulting in numerous areas such as revenue management.  (CAC ¶ 109.)

As to the Sabre GDS, Plaintiffs allege that Sabre "implemented" a "Rate Assured Program," wherein Sabre "validate[s] rate parity" and "[i]f it is determined that a property is not providing rate parity . . . , it will essentially be placed on 'Probation' status [and] [i]f a property is not providing rate parity in a subsequent measurement, Sabre will consider the hotel 'In

---

[1] Sabre indirectly owns Defendant Travelocity.com L.P. ("Travelocity").

Violation.'" (CAC ¶ 108.) Plaintiffs do not allege for what purpose, if any, Sabre uses this information or the effect, if any, of being put on "probationary status." Plaintiffs do not allege, for example, that participation in the Rate Assured Program is a requirement for participation in the Sabre GDS. In other words, Plaintiffs do not allege that the Rate Assured Program is anything other than its name implies—a means by which Sabre assures its travel agency customers that a particular price available in the Sabre GDS is the lowest price available in the market and, unremarkably, that if Sabre determines that this is not the case, it will not so assure its travel agency customers. Moreover, Plaintiffs do not even allege that "merchant model" or "wholesale model" hotel rates are in the Sabre GDS.

As to Sabre Hospitality Solutions, Plaintiffs allege that it "expressly markets and encourages hotels to adopt rate parity," which Plaintiffs conclusorily assert is "in effect, the RPM scheme." (CAC ¶ 109.) Plaintiffs refer to two entries in the publicly available "Sabre Hospitality Solutions Blog," in which the authors observe that an individual hotel can help increase the traffic on the hotel's website by ensuring that the room rate offered on the hotel's website is as low as the rate offered through any other distribution channel for the purpose of "driv[ing] business *back to your own property website*."[2] The discussion is explicitly about the benefits of *intra*brand distribution structures that an individual hotel might decide to adopt.[3]

---

[2]   *See* http://www.sabrehospitality.com/blog/2011-11-30/three-top-trends-in-hospitality-marketing-and-distribution-to-consider-when-planning-for-2012 (cited in CAC ¶ 109) (emphasis added).

[3]   The only other fact alleged about Sabre is that it was "present" at Eyefortravel conferences in 2004, 2006 and 2008, where Plaintiffs assert there were panels where rate parity or pricing were discussed—yet Plaintiffs do not allege that any Sabre employee sat on those panels. (*See* CAC ¶¶ 87-88, 94-95, 99-100). Plaintiffs allege only one panel on which a Sabre employee actually participated (*see id.* ¶ 90); this panel was the at the Eyefortravel conference in October 2005 at which the Senior Vice President of the "Sabre Travel Network" allegedly spoke (*Id.*). But Plaintiffs do not allege what topic the Sabre employee spoke about nor do they even allege what the Sabre Travel Network is. Plaintiffs also allege that "all of the Defendants"

3

## ARGUMENT

I. **PLAINTIFFS' ASSERTIONS REGARDING SABRE ARE NOT SUFFICIENT TO IMPLICATE SABRE IN THE ASSERTED CONSPIRACY INVOLVING THE OTC AND HOTEL DEFENDANTS**

Plaintiffs barely mention Sabre (as distinct from Travelocity) in the CAC. The few allegations directed at Sabre do not support Plaintiffs' asserted antitrust claims against it, regardless of the Court's disposition of Plaintiffs' claims against other Defendants. As a preliminary matter, Plaintiffs' allegation that Sabre owns Travelocity would not enable Plaintiffs to pursue a claim against Sabre based on Travelocity's conduct, even were the claims against Travelocity to go forward. *See, e.g.*, *Cupp v. Alberto-Culver USA, Inc.*, 310 F. Supp. 2d 963, 974 (W.D. Tenn. 2004) ("Nor does the mere existence of a corporate relationship implicate a parent in its subsidiary's actions.").

Rather, Plaintiffs must, at a minimum, allege facts connecting Sabre's own conduct directly to the alleged conspiracy. *See, e.g.*, *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 169 (D.D.C. 2004) (holding that, to avoid dismissal, plaintiff must allege how the defendant's actions were consciously "in furtherance" of the conspiracy, not merely supportive of it). These facts must be sufficient to raise a plausible inference that Sabre had "a unity of purpose or a common design and understanding or a meeting of minds in an unlawful arrangement," with the other defendants. *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1055 (9th Cir. 1981) (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809-10 (1946)). Plaintiffs must allege facts that tend to exclude "independent self-interested conduct" as the explanation for Sabre's alleged actions. *Bell Atl. Corp. v. Twombly*,

---

attended Eyefortravel conferences in 2009, 2011, and 2012, but allege nothing about what was discussed. (*Id.* ¶ 103.) Plaintiffs concede that Sabre did not even attend the 2007 Eyefortravel conference. (*See id.* ¶ 97.)

550 U.S. 544, 557 (2007); *Rio Grande Royalty Co. v. Energy Transfer Partners*, 786 F. Supp. 2d 1190, 1198 (S.D. Tex. 2009) ("The complaint does need to exclude the possibility of independent action.").

Plaintiffs allege nothing to connect Sabre's alleged actions to the alleged conspiracy. The Rate Assured Program helps to ensure that travel agents using Sabre's GDS system have access to the best rates available for a given hotel room. Sabre's "independent self-interest" in doing so—to better serve its customers and to thereby attract travel agents to its GDS—is manifest. Accordingly, even were the broad conspiracy asserted against the Hotel Defendants and the OTCs to survive a motion to dismiss, the limited allegations that Sabre keeps track of whether a hotel makes its best rates available to the GDS cannot implicate Sabre in any such conspiracy. *See, e.g.*, *Jung*, 300 F. Supp. 2d at 172-73 ("The Court will not infer . . . that a separate entity that monitors [compliance with allegedly anticompetitive restrictions] participated in the conspiracy"); *id.* at 168-69 (holding that "paucity of detail" regarding defendants alleged "dissemination of [relevant] information . . . do not survive a motion to dismiss for failure to state a claim").

Nor do Plaintiffs' allegations about Sabre Hospitality Solutions change the result. The two cited blog entries constitute public statements about the potential benefits of certain *intra*brand distribution structures that are no different in kind than those made by the Supreme Court in *Leegin*. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007). Again, it would plainly be in Sabre's "independent self-interest" to do so. *See, e.g.*, *Inglis*, 668 F.2d at 1055-56 (holding that "a reasonable inference of conspiracy was not possible" from allegations that consultant suggested means of "responding to competition," including "maintain[ing] prices to hasten wholesaler exit").

5

By the same token, the allegations of sporadic attendance at industry conferences do not, either alone or in combination with the other allegations directed at Sabre, suggest that Sabre had a "unity of purpose or common design and understanding or a meeting of minds in an unlawful arrangement" as required to go forward with a claim against Sabre.[4] *Inglis*, 668 F.2d at 1055. Sabre's participation in such industry-wide conferences is utterly unremarkable, especially in light of Sabre's extensive support to the travel industry.[5]

Because Plaintiffs have failed to allege facts to connect Sabre to the antitrust conspiracy they posit, the federal and state antitrust claims against Sabre should be dismissed, even were they otherwise to have merit (which they do not for the reasons stated in the Omnibus Memorandum).

## II. PLAINTIFFS' STATE CONSUMER PROTECTION CLAIMS SHOULD BE DISMISSED

Plaintiffs' state consumer protection claims against Sabre should be dismissed for the reasons stated in the Omnibus Memorandum. These claims against Sabre fall for the additional reason that Plaintiffs do not allege that Sabre dealt with consumers (as opposed to travel agents) or had (much less advertised or promoted) a "best price" guarantee.

## III. PLAINTIFFS FAIL TO PLEAD FACTS TO TOLL THE APPLICABLE STATUTES OF LIMITATIONS

All claims brought outside the relevant statute of limitations should likewise be dismissed for the reasons stated in the Omnibus Memorandum.

---

[4] *See supra* n.3.

[5] Nor could Plaintiffs proceed with a vertical antitrust claim against Sabre. Plaintiffs do not allege that any Plaintiffs or even any member of the putative class used a Sabre system to arrange their hotel stay. Indeed, Plaintiffs do not plead that Sabre is even involved in the relevant market, much less that it has market power in any relevant market.

**CONCLUSION**

For the reasons set forth above, Plaintiffs have failed to allege any claim against Sabre for which relief should be granted, and their claims against Sabre should be dismissed with prejudice.

Dated: July 1, 2013

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: */s/ Steven J. Kaiser*
    George S. Cary (DC Bar No. 285411)
    Steven J. Kaiser (DC Bar No. 454251)

2000 Pennsylvania Ave., NW
Washington, DC 20006
(202) 974-1500
(202) 974-1999 (facsimile)
gcary@cgsh.com
skaiser@cgsh.com

*Counsel for Defendant Sabre Holdings Corporation.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 1, 2013, I caused a true and correct copy of the foregoing document to be served by electronic transmission through the Court's CM/ECF system to counsel registered to receive electronic notification.

                                        */s/ Steven J. Kaiser*
                                        Steven J. Kaiser (DC Bar No. 454251)
                                        2000 Pennsylvania Avenue, NW
                                        Washington, DC 20006
                                        (202) 974-1500
                                        (202) 974-199 (facsimile)
                                        skaiser@cgsh.com

                                        *Counsel for Defendant Sabre Holdings Corporation.*